IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| I. STEPHAN BLOCH (#66982-079), | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-4861 |
| | § | |
| DANESA SAMUELS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Former federal prisoner I. Stephan Bloch filed this action alleging that several individuals employed in one capacity or another by the United States Bureau of Prisons violated his civil rights while he was in custody at a local facility. Defendant Cory Clark has filed a motion to dismiss or, in the alternative, a motion for summary judgment. (Doc. #25). Although the Court granted Bloch an extension of time, he has not filed a response to date. After reviewing all of the pleadings, the motion, and the applicable law, the Court grants Clark's motion for summary judgment and dismisses this case for reasons set forth below.

## I.  BACKGROUND

Bloch filed this suit on December 29, 2004, while he was incarcerated at the Leidel Comprehensive Sanction Center ("Leidel Center") in Houston, Texas. The Leidel Center is a privately run "halfway house" or "Community Corrections Center" for federal prisoners, which operates under contract with the United States Bureau of Prisons. Bloch was sent to the Leidel Center on August 18, 2004, from a federal prison facility in Beaumont, to serve

the final six months of a sentence that expired on February 18, 2005. On that date, Bloch was released from the Leidel Center. Bloch reports that he is presently living in Houston while on supervised release.

Invoking *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), Bloch sues the owner/operator of the Leidel Center (Cornell Companies, Inc.) and three of its employees, including Case Manager Danesa Samuels, Supervisor Mary Robinson, and Facility Director Terry Garcia. Bloch also sues Cory Clark, who is employed by the Bureau of Prisons as the Community Corrections Manager who oversees the Leidel Center and other CCC facilities in the regional area.

Bloch's complaint concerns his request to attend certain "religious services" in the form of daily Catholic mass, among other things. Bloch states that he is a practicing "Roman Catholic, whose religion is very important to him." According to Bloch, "[t]he Catholic Church teaches that daily Mass attendance, including Holy Communion reception, is a highly desirable practice leading to the forgiveness and prevention of sin and the individual's becoming closer to God." Another practice deemed "necessary for the forgiveness of sin" by the Catholic Church is the "Sacrament of Confession."

Bloch reports that the Leidel Center permits certain eligible inmates to leave the premises unescorted under a "pass system." An inmate who satisfies certain prerequisites is eligible to receive a "religious pass" to attend church services on the weekends.[1] Shortly

---

[1]      According to Bloch, inmates eligible for a pass must have spent at least thirty days in the
(continued...)

after he arrived at the Leidel Center, Bloch requested a pass on August 25, 2004, to attend daily mass at a Catholic church located within fifteen minutes of Leidel Center.  Bloch states that Samuels refused this request because he did not satisfy one of the prerequisites for obtaining a pass.  Specifically, Bloch had not yet spent the requisite thirty days at the facility. On September 22, 2004, after Bloch had reportedly completed all of the prerequisites for a pass, Bloch met with Samuels and Robinson and again requested permission to attend mass on a daily basis.  His request was denied.

On September 23, 2004, Bloch wrote a letter to Clark to request permission to attend daily mass.  A few days later, on September 28, 2004, Clark replied that Bloch was allowed "one religious service pass per week" pursuant to Bureau of Prisons policy.  On October 25, 2004, Bloch spoke to Garcia about the matter, who confirmed that the governing policy allowed a pass for church attendance only once a week.

On November 29, 2004, Bloch reportedly requested a pass to attend a special mass on December 8, 2004, which he describes as a "Catholic Holy Day of Obligation" to celebrate "the Solemnity of the Immaculate Conception."  According to Bloch, he was denied permission to attend this particular service unless he agreed to give up his pass for Sunday

---

[1](...continued)
    facility and must have completed other prerequisites, such as a twenty-hour in-house educational program. Bloch reports that, if an inmate satisfies these prerequisites, then passes are typically available for the following purposes: (1) to work; (2) to seek work; (3) to obtain a driver's license; (4) for medical reasons; (5) to seek assistance from the Social Security Administration; (6) to shop for personal supplies; (7) recreation; and (8) to attend church on a weekly basis.

3

mass in exchange.  On December 4, 2004, Bloch filed a grievance, complaining that he had been denied permission to attend daily mass and that had further been denied permission to attend mass on the Catholic Holy Day of Obligation.  He did not, however, pursue the formal administrative remedy program established by the Bureau of Prisons.  Subsequently, Bloch reports that he was also denied permission to participate in the Sacrament of Confession on December 6, 2004.

Bloch contends that, by denying him a pass to attend mass on a daily basis, and by denying his request to attend specific services on the Holy Day of Obligation or to participate in the Sacrament of Confession on a particular date, the defendants have violated his rights under the Religious Land Use and Institutionalized Persons Act (the "RLUIPA"), the Religious Freedom Restoration Act (the "RFRA"), and the First Amendment to the United States Constitution.  Bloch seeks compensatory damages of $5,000,000 and punitive damages in the amount of $5,000,000 from each defendant.

Clark has filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Alternatively, Clark moves for summary judgment, arguing that all of Bloch's claims fail as a matter of law.  Because the motion filed by Clark includes supporting documentation, the Court will review his arguments under the summary judgment standard of review.

## II.    STANDARD OF REVIEW

4

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under Rule 56, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action. *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citation omitted).  All facts and inferences are viewed "in the light most favorable to the nonmoving party[.]" *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005) (citation omitted). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.* (citation omitted).  "A fact issue is material if its resolution could affect the outcome of the action." *Id.* (citation omitted).

The plaintiff proceeds *pro se* in this case.  Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519 (1972).  Under this standard, pleadings filed by a *pro se* litigant are

5

entitled to a liberal construction that affords all reasonable inferences which can be drawn from them.  *See Haines*, 404 U.S. at 521; *see also United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997) (citing *Nerren v. Livingston Police Dept.*, 84 F.3d 469, 473 & n.16 (5th Cir. 1996)).  Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion.  *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992); *see also Ogbodiegwu v. Wackenhut Corrections Corp.*, 202 F.3d 265 (5th Cir. 1999) (unpublished table opinion) ("Although the pleadings filed by *pro se* parties are held to 'less stringent standards than formal pleadings drafted by lawyers,' *pro se* parties must still comply with the rules of procedure and make arguments capable of withstanding summary judgment.").

As noted above, the plaintiff has not filed a response to the motion for summary judgment within the time allowed.  According to this Court's local rules, responses to motions are due within twenty days, S.D. TEX. R. 7.3, unless the time is extended.  Any failure to respond is taken as a representation of no opposition.  S.D. TEX. R. 7.4.  The Court specifically directed the plaintiff to respond within thirty days to any dispositive motion filed by the defendants or face dismissal for want of prosecution.  (Docket Entry No. 10, ¶ 6). The Court also granted the plaintiff additional time, up to and including July 10, 2006, to file a response.

Notwithstanding the plaintiff's failure to respond, summary judgment may not be awarded by default.  *See Hibernia Nat'l Bank v. Administration Cent. Sociedad Anonima*,

6

776 F.2d 1277, 1279 (5th Cir. 1985).  "A motion for summary judgment cannot be granted

simply because there is no opposition, even if failure to oppose violated a local rule."  *Hetzel*

*v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995) (citing *Hibernia Nat'l Bank*,

776 F.2d at 1279).  In that regard, the movant has the burden of establishing the absence of

a genuine issue of material fact and, unless he has done so, the reviewing court may not grant

the motion regardless of whether any response was filed.  *See Hetzel*, 50 F.3d at 362 n.3.

However, in determining whether summary judgment is warranted, the district court may

accept as undisputed the facts set forth in the unopposed motion.  *See Eversley v. MBank*

*Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).

## III.   DISCUSSION

### A.   Failure to Exhaust Administrative Remedies

Clark argues that the complaint must be dismissed because Bloch failed to exhaust

available administrative remedies before filing suit.  Because Bloch filed this suit while in

custody, his complaint is governed by the Prison Litigation Reform Act (the "PLRA").

Under the PLRA, codified as amended at 42 U.S.C. § 1997e(a), an inmate is required to

exhaust administrative remedies for all "action[s] . . . brought with respect to prison

conditions" before filing a civil rights suit in federal court under 42 U.S.C. § 1983 or "any

other Federal law."  The Supreme Court has held repeatedly that § 1997e(a) requires

exhaustion of *all* administrative procedures before an inmate can sue in federal court.  *See*

*Booth v. Churner*, 532 U.S. 731, 741 (2001); *see also Porter v. Nussle*, 534 U.S. 516, 532

(2002) (holding that the PLRA requires exhaustion of all claims concerning prison life,

whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong).  It is established that federal prisoners suing under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), must first exhaust administrative procedures prior to filing suit just as state inmates who sue under 42 U.S.C. § 1983.  *See Nussle*, 534 U.S. at 524.

The administrative remedies available to Bloch are set out at 28 C.F.R. § 542, Subpart B (Administrative Remedy Program) (2004).  Under this framework, the Bureau of Prisons has established a three-tiered Administrative Remedy Program whereby an inmate may progressively redress grievances at the institutional, regional, and central or national levels. *See* 28 C.F.R. §§ 542.13 – 542.15 (providing that an inmate "shall" first attempt informal resolution before filing an initial "formal written Administrative Remedy Request" at the institutional level, followed by appeals to the regional director and then to the General Counsel if the inmate is not satisfied with the response).  This administrative regime applies to all inmates in institutions operated by the Bureau of Prisons, to inmates designated to contract Community Corrections Centers (CCCs) under Bureau of Prisons responsibility, and to former inmates for issues that arose during their confinement.  28 C.F.R. § 542.10(b).

According to Clark, who has provided an affidavit in support of the motion for summary judgment, the Leidel Center is a CCC under Bureau of Prisons responsibility.  *See* Doc. #25, *Defendant's Motion*, Exhibit 2 (*Clark Affidavit*), ¶ 1.  Thus, the above-referenced administrative regime applies to Bloch's claims with the exception that inmates housed in CCC facilities are not required to first attempt informal resolution before pursuing formal

procedures.  *See Clark Affidavit*, ¶ 8 (citing 28 C.F.R. § 542.13(a)).  Bloch was therefore required to complete the formal three-level administrative process by filing grievances with the Community Corrections Manager, followed by an appeal to the regional director, and a final appeal to the Bureau's Central Office, in compliance with governing regulations.  *See Clark Affidavit*, ¶ 5.

Bloch alleges in his complaint that he completed the administrative remedy process by filing a grievance on December 4, 2004.  The form filed by Bloch, entitled a "Resident Grievance," is attached to the complaint.  *See* Doc. #1, *Complaint*, Exhibit E.  Handwritten by Bloch on the face of this grievance is the inscription "BP-8." *See id*.

Clark notes that a BP-8 is used for informal resolution of grievances, which inmates who reside in CCC facilities are not required to attempt.  *Clark Affidavit*, ¶¶ 8-9.  To exhaust the administrative process, which is outlined above, Clark explains that inmates such as Bloch must submit an initial filing in the form of a written Administrative Remedy Request (a form BP-9) to a designated institution staff member pursuant to 28 C.F.R. § 542.14(c)(4), or they may submit their request by mail directly to the Community Corrections Manager.  *See id*.  If unsatisfied with the result that they receive, an inmate must file an appeal (a form BP-10) at the regional level, followed by an appeal to the national level (a form BP-11).  *See id*.

Clark reports that he is the Community Corrections Manager in charge of the Leidel Center and other CCC facilities in the Southern and Eastern Districts of Texas.  *Clark Affidavit*, ¶ 1.  Clark notes that the above-referenced administrative remedy procedure is

9

outlined for inmates in the Leidel Center Handbook and that it is also posted on an accessible bulletin board for review by residents of that facility. *See id.* ¶ 11. According to Clark, BP-9 forms are always available to inmates at the Leidel Center. *See id.* If Bloch had complained that such a form was not available, then Clark would have provided him with one. *See id.*

Clark confirms that he received a letter from Bloch concerning his attempt at informal resolution of his request for leave to attend mass on a daily basis. *Clark Affidavit*, ¶ 13. Clark responded to the letter five days later, informing Bloch that he was permitted to leave Leidel Center for up to four hours each weekend to attend religious services pursuant to Bureau of Prisons policy. *See id.* ¶ 14 & Attachment 3. Clark reports that, if he had received a letter asking for permission to leave the Leidel Center on a specific date for "holy day Catholic mass," then he would have contacted the Leidel Center staff for information regarding the plaintiff's situation and considered the request. *See id.* ¶ 18. Clark states, however, that Bloch's letter did not request a pass for a specific date; rather, he only requested permission to leave on a daily basis for mass. *See id.*

According to Clark, Bloch did not pursue the formal administrative grievance process with regard to any of his claims. Clark reports that he did not receive any BP-9 initial grievance form from Bloch regarding the issues raised in the present complaint about a refusal to allow attendance at daily mass or any other particular religious service. *See Clark Affidavit* ¶ 9. Likewise, Clark states that he did not receive a letter or any other complaint from Bloch stating that he had been denied access to BP-9 forms or that Leidel Center staff were refusing to respond to his attempts at informal resolution. *See id.* ¶ 9.

10

As further support, Clark presents an affidavit from Bureau of Prisons Paralegal Specialist Michael Flagor.  *See* Doc. #25, *Defendant's Motion*, Exhibit 3 (*Flagor Affidavit*). Flagor states that he reviewed a database kept by the Bureau of Prisons and confirmed that, although Bloch had filed as many as thirty-two (32) Administrative Remedy Requests while in prison previously, he did not file an Administrative Remedy Request at any level on the topics alleged in the present complaint.  *See id.* ¶ 4.  By failing to complete all three steps of the administrative remedy program, Clark maintains that Bloch failed to exhaust his remedies as required before filing suit.

In a recent decision, the Supreme Court has emphasized that the exhaustion requirement found in the PLRA, 42 U.S.C. § 1997e(a), mandates "proper exhaustion," *Woodford v. Ngo*, — U.S. —, 126 S. Ct. 2378, 2387 (2006), which demands compliance with prison procedural rules.  Because § 1997e(a) expressly requires exhaustion, prisoners may not deliberately bypass the administrative process by flouting an agency's procedural rules.  *See id.*, 126 S. Ct. at 2389-90.  By failing to complete the grievance process in compliance with procedures, Bloch failed to properly exhaust his administrative remedies before filing his complaint in federal court.  This is not sufficient to satisfy the PLRA's exhaustion requirement found in § 1997e(a), which mandates exhaustion *before* filing suit. *See Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998) (affirming the dismissal even under circumstances that would seem "inefficient"), *cert. denied*, 526 U.S. 1133 (1999).

Bloch's failure to exhaust administrative remedies affects all of his claims, meaning that his complaint is subject to dismissal for lack of compliance with § 1997e(a).  Because

the record discloses no genuine issue of material fact, Clark is entitled to summary judgment on this issue.  Alternatively, the Court concludes that the plaintiff's claims fail for other reasons discussed further below.

### B.    Claims for Compensatory and Punitive Damages

Clark notes that Bloch seeks only compensatory and punitive damages for refusing permission to attend daily Catholic mass in violation of the constitution and federal laws. Clark argues that Bloch's claims fail as a matter of law because the PLRA, 42 U.S.C. § 1997e(e), bars recovery of these types of damages absent a showing that the plaintiff suffered a physical injury while in custody.

The Fifth Circuit has confirmed that compensatory damages are barred by 42 U.S.C. § 1997e(e) in a case such as this one where there is no showing of any physical injury.[2] *Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005) ("To the extent [that the prisoner] seeks compensation for injuries alleged to have resulted from a First Amendment violation, the district court properly determined that his claim is barred by the physical injury requirement of § 1997e(e).").  Absent an allegation that Bloch suffered any physical injury while in custody, his claim for compensatory damages lacks an arguable basis in law and is subject to dismissal for failure to state a claim upon which relief can be granted.  28 U.S.C. § 1915(e)(2)(B); *Geiger*, 404 F.3d at 374.

---

[2]    42 U.S.C. § 1997e(e) provides as follows: "No federal civil action may be brought by a prisoner confined to a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

To the extent that Bloch's claim for punitive damages is also premised on mental or emotional distress, he has not alleged facts showing that the defendants' conduct was so egregious or reprehensible as to warrant punitive damages. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003); *BMW of North Amer. Inc. v. Gore*, 517 U.S. 559, 575 (1996). Moreover, to the extent that Bloch seeks punitive damages to compensate for any alleged emotional harm resulting from a constitutional violation, this claim also appears barred by the PLRA. *See Davis v. District of Columbia*, 158 F.3d 1342, 1348 (D.C. Cir. 1998) (holding that compensatory and punitive damages for violations of the constitutional right to privacy are barred by the PLRA); *but see Allah v. Al-Hafeez*, 226 F.3d 247, 253 (3d Cir. 2000) (distinguishing between punitive damages sought for a constitutional violation itself, and punitive damages sought to compensate for mental or emotional suffering of the type barred by § 1997e(e)). As discussed further below, Bloch does not demonstrate a constitutional violation in this case. Because the damages sought by Bloch are barred by the PLRA, his claims fail as a matter of law and Clark is entitled to summary judgment on this issue. Clark contends further that Bloch's claims under the RLUIPA, the RFRA, and the First Amendment fail for additional reasons.

### C.    Bloch Has No Claim Under the RLUIPA

Bloch complains that the defendants have violated his rights under the Religious Land Use and Institutionalized Persons Act (the "RLUIPA"), codified as amended at 42 U.S.C. § 2000cc et seq., by substantially burdening his right to attend daily mass and other religious

services as he pleased.[3]  Clark correctly notes, however, that the RLUIPA applies only the

government of a "state, county, municipality or other government created under the authority

of a state."  42 U.S.C. § 2000cc-5(4).  The RLUIPA does not apply to the federal

government, which continues to be subject to the Religious Freedom Restoration Act (the

"RFRA"), 42 U.S.C. § 2000bb *et seq.  See Madison v. Riter*, 355 F.3d 310, 315 (4th Cir.

2003), *cert. denied sub nom. Bass v. Madison*, — U.S. —, 125 S. Ct. 2536 (2005).  Thus,

Bloch has no claim under the RLUIPA.  *See Ish Yerushalayim v. United States Dep't of*

*Corrections*, 374 F.3d 89, 92 (2d Cir. 2004) (concluding that the RLUIPA "clearly does not

create a cause of action against the federal government or its correctional facilities").

Accordingly, Clark is entitled to summary judgment on Bloch's claims under the RLUIPA.

### D.    Bloch Has No Claim Under the RFRA

As with his RLUIPA claim, Bloch alleges that the defendants have substantially

burdened the exercise of his religious beliefs in violation of the RFRA by denying him

permission to attend mass on a daily basis and other specific religious services.[4]  Clark

maintains that, while federal prisoners are protected by the RFRA, Bloch has no claim in this

instance because this statute does not permit the sort of damages that he seeks.  Specifically,

---

[3]    Section 3(a) of RLUIPA states that "[n]o government shall impose a substantial burden on
the religious exercise of a person residing in or confined to an institution . . . even if the
burden results from a rule of general applicability, unless the government demonstrates that
imposition of the burden on that person – (1) is in furtherance of a compelling government
interest; and (2) is the least restrictive means of furthering that compelling government
interest." 42 U.S.C. § 2000cc-1(a).

[4]    The RFRA prohibits the federal government from placing a substantial burden on a sincere
exercise of religion.  42 U.S.C. § 2000bb-1.

the RFRA authorizes only "appropriate relief against a government," 42 U.S.C. § 2000bb-1(c), which has been construed to mean injunctive relief only from a governmental entity. Federal officials are protected from claims for monetary damages by sovereign immunity, which was not waived by the RFRA.  *See Webman v. Federal Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006) (holding that the RFRA does not waive the federal government's sovereign immunity for damages).  Moreover, because the statute plainly provides only for "appropriate relief against a government," RFRA does not contemplate recovery from individuals.  *See Gooden v. Crain*, 405 F. Supp. 2d 714, 723 (E.D. Tex. 2005) (interpreting an identically worded portion of the RLUIPA).

Clark points out that Bloch does not seek injunctive relief, but that he asks only for compensatory and punitive damages in the amount of $5,000,000 per defendant.  Because the complaint in this case does not seek "appropriate relief from a government" entity, Bloch cannot recover under the RFRA.[5]  For this reason, Clark is entitled to summary judgment on Bloch's claims under the RFRA.

### E.    Bloch Fails to Demonstrate a Constitutional Violation

Bloch complains that, by refusing him permission to attend mass on a daily basis and other specific Catholic services, the restrictions imposed on him at the Leidel Center violated his right to freely exercise his religion under the First Amendment to the United States

---

[5]      It would be futile to allow Bloch to amend his complaint to add a claim for injunctive relief. His release from prison has made any such claim a moot point. *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001); *Rocky v. King*, 900 F.2d 864, 867 (5th Cir. 1990).

Constitution.  Clark maintains that the policy in place at the Leidel Center afforded Bloch a reasonable opportunity to exercise his religious beliefs and that he fails to demonstrate a First Amendment violation.

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."  U.S. CONST. amend. I.  In keeping with the curtailment of privileges contemplated by a criminal conviction and prison sentence, inmates retain only those First Amendment rights that are consistent with their status as prisoners or with the legitimate penological objectives of the corrections institution. *Hudson v. Palmer*, 468 U.S. 517, 523 (1984).  "[C]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves." *Pell v. Procunier*, 417 U.S. 817, 823 (1974); *see also Procunier v. Martinez*, 416 U.S. 396, 412 (1974). "Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Accordingly, the Supreme Court has held that "even when an institutional restriction infringes a specific constitutional guarantee, such as the First Amendment, the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." *Id.* (citing *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 129 (1977)).

In the prison context, regulations burdening an inmate's religious practices have traditionally been subject to a deferential standard and held valid if "reasonably related to

legitimate penological interests." *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987). In *Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court set out the relevant factors for deciding the reasonableness of such a prison regulation, including: (1) whether there is a valid, rational connection between the regulation and the legitimate, neutral governmental interest used to justify it; (2) whether there exist alternative means for prisoners to exercise the constitutional right at issue; (3) the impact of an accommodation on prison staff, inmates, and allocation of prison resources; and (4) whether any alternative exists that would fully accommodate prisoners' rights at low costs to valid penological interests. *Id.* at 89-91; *see Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 860-61 (5th Cir. 2004) (applying the *Turner* factors to a prison policy providing religious services to five major designated religious sub-groups).

Clark contends that Bloch fails to show that his right to free expression of religion has been unreasonably burdened. As Bloch concedes in his pleadings, prisoners assigned to the Leidel Center may obtain a pass to attend off-site religious services on a weekly basis. According to the applicable policy, "[p]asses are a privilege" subject to consideration and approval by the Leidel Center Director or designee. *See Clark Affidavit*, Attachment 2 *BOP Resident Program Handbook - Leidel Center*, ¶ 106. The policy in place at the Leidel Center allows all residents the opportunity to participate in religious activities as follows:

### XVII. Religious and Recreation Activities

120)   It is the policy of the Leidel Center that all residents are allowed to participate in the religious activities of his/her choice.

121)   Residents may be allowed up to (4) four hours each weekend to attend religious services.  Resident(s) must have completed their intake, case manager orientation, and job developer orientation prior to approval for a religious pass.

123)   Time allotment considerations will include mode of transportation and verification by Leidel Center staff of church service times.

*See id*. ¶¶ 120-123.  Clark insists that the policy is reasonable and that it does not run afoul of the First Amendment.

Bloch does not deny that he was afforded the opportunity to attend Catholic Mass on the weekends under the Leidel Center policy.  He contends, instead, that the policy is constitutionally inadequate because he was not allowed to participate in mass on a daily basis or to attend two specific services.  As Clark correctly notes, however, the Fifth Circuit has upheld a much more restrictive policy affording generic weekly services as a reasonable alternative to specific religious accommodations requested by prisoners.  *See Freeman*, 369 F.3d at 861 (rejecting a free exercise challenge by members of the Church of Christ against the religious accommodation policy for prisoners in custody of the Texas Department of Criminal Justice); *see also Adkins v. Kaspar*, 393 F.3d 559, 564-65 (5th Cir. 2004) (rejecting a free exercise challenge to the TDCJ religious accommodation policy by a member of the Yahweh Evangelical Assembly).  As the Fifth Circuit has explained, "[t]he pertinent question is not whether the inmates have been denied specific religious accommodations, but whether, more broadly, the prison affords the inmates opportunities to exercise their faith."  *Freeman*, 369 F.3d at 861 (citing *Goff v. Graves*, 362 F.3d 543, 549 (8th Cir. 2004) ("The critical question for *Turner* purposes is whether the prison officials' actions deny prisoners their

18

free-exercise rights without leaving open sufficient alternative avenues for religious exercise.")).

According to the pleadings, Bloch admits that he was provided an avenue to exercise his religious beliefs.  He fails to show that the Leidel Center policy is unreasonable or that he was denied an opportunity to exercise his religious beliefs in violation of the First Amendment.  Therefore, Clark is entitled to summary judgment on this issue.

### F.    Remaining Defendants

The Fifth Circuit has recognized that when one defending party establishes that the plaintiff has no cause of action, as Clark has in this case, this defense generally inures also to the benefit of other similarly situated defendants.  *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (quoting *United States v. Peerless Ins. Co.*, 374 F.2d 942, 945 (4th Cir. 1967) (citations omitted)).  The motion filed by Clark disposes of all of the claims presented in the complaint.  Therefore, the Court dismisses Bloch's claims against the other defendants under 28 U.S.C. § 1915(e)(2)(B) as without an arguable basis in law.

### G.    Plaintiff's Motion for Additional Time

Clark filed his motion to dismiss and alternative motion for summary judgment on May 25, 2006, making Bloch's response due thirty days later on or about June 24, 2006.  Bloch requested sixty days additional time to respond.  Noting Bloch's prior experience with

claims similar to the ones that he raises here,[6] the Court granted a limited extension of time until July 10, 2006.  To date, Bloch has not filed a response to the motion.  Instead, he has filed a motion asking the Court to reconsider extending the time to respond to a full sixty days.  (Doc. #28).

The issues presented in this case are straightforward even for a *pro se* litigant. Bloch's failure to exhaust his administrative remedies is fatal to all of his claims.  Likewise, even assuming a violation, Bloch is not entitled to the damages requested as a matter of law. Accordingly, the Court declines to consider its decision regarding the extension of time granted previously in this case.

## IV.   CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.   Clark's motion to dismiss and alternative motion for summary judgment (Doc. #25) is **GRANTED**.

2.   The claims against the remaining defendants are **DISMISSED** under 28 U.S.C. § 1915(e)(2)(B) as without an arguable basis in law.

3.   Bloch's motion for reconsideration (Doc. #28) is **DENIED**.

4.   The complaint is **DISMISSED** with prejudice.

---

[6]   Bloch has made other religious accommodation claims against officials with the Bureau of Prisons.  At least one of those cases, *Bloch v. Thompson*, Civil Action No. 1:03-cv-1352 (E.D. Tex.), remains pending with a dispositive motion that has been on file since October of 2005. Another religious accommodation case of Bloch's, which complained that he and other Catholic inmates had been denied the opportunity to receive wine with communion, was recently dismissed as frivolous.  *See Bloch v. Williams*, Civil Action No. 1:04-cv-347 (E.D. Tex. June 19, 2006).  Thus, Bloch cannot claim to be unfamiliar with the issues raised by Clark's motion.

The Clerk is directed to provide copies of this order to the parties.

SIGNED at Houston, Texas, on **August 3, 2006.**

_____
Nancy F. Atlas
United States District Judge